UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

ABDUMADZHITKHON ZIIADULLAEV,

    Petitioner,

v.                                                                                  No. 1:25-CV-292-H

TODD M. LYONS, et al.,

    Respondents.

## ORDER

Before the Court is Abdumadzhitkhon Ziiadullaev's motion to transfer venue. Dkt. No. 18. As explained below, his counsel petitioned for a writ of habeas corpus while he was in transit from this district to another. *See* Dkt. No. 1. That's a problem. Habeas relief is available in only one district: the district of confinement. And based on the information at hand, the respondents do not dispute that Ziiadullaev was outside the Northern District of Texas when his petition was filed. So the Court cannot resolve the petition. That said, a transfer is not appropriate. *See* 28 U.S.C. § 1406(a). Neither the history of this case nor the interest of justice favor exercising that discretion. Thus, the Court denies the motion to transfer venue (Dkt. No. 18) and dismisses the petition (Dkt. No. 1) without prejudice.

## 1. Background

Ziiadullaev, a citizen of Russia, was paroled into the United States after applying for admission in 2023. Dkt. No. 14 at 4–5. Years later, in June 2025, ICE detained Ziiadullaev after his parole expired. *Id.*; Dkt. No. 1 ¶ 9. He has been in custody since. Dkt. No. 14 at 5.

On December 30, 2025, Ziiadullaev's counsel petitioned for a writ of habeas corpus challenging her client's detention under the Due Process Clause. *See* Dkt. No. 1. The

petition, filed at 11:54 a.m., represented that Ziiadullaev was detained at the Bluebonnet Detention Facility, which is in the Northern District of Texas. *See id.* ¶ 7.

That representation was wrong. When the petition was filed, Ziiadullaev was en route to the Diamondback Correctional Facility, an ICE detention center in the Western District of Oklahoma. The transport left Bluebonnet at 7:54 a.m. that morning—exactly four hours before the petition was filed in this Court. Dkt. No. 20 at 4. According to ICE, it takes four-and-a-half hours to drive from Bluebonnet to Diamondback. *Id.* So while the government cannot say for sure, it is unlikely that Ziiadullaev had arrived at Diamondback when the petition was filed at 11:54 a.m. Dkt. No. 19 at 2. But he was almost certainly in Oklahoma, given that Bluebonnet is about two hours from the state line. Dkt. No. 21-1 at 2.

Litigation continued without any indication of the mix-up. Ziiadullaev's counsel moved for a temporary restraining order, which the Court considered and later denied. Dkt. Nos. 2; 10. The Court also launched a briefing schedule with its standard show-cause order. Dkt. No. 4. The next day (the day after Ziiadullaev was transferred to Diamondback), his counsel filed an amended petition that, again, claimed he was detained at Bluebonnet. Dkt. No. 8 ¶ 7. But one change stands out. The amended petition added a new respondent: "the Warden of the Facility Where Petitioner Is Currently Detained." *Id.* ¶ 8. Counsel noted that Ziiadullaev's "place of detention may change during the pendency of this action"—a timely observation given the previous day's events. *Id.* The new respondent was therefore meant to capture "any warden or equivalent official who exercises day-to-day custody over [Ziiadullaev] at the time the Court issues its decision." *Id.* About two weeks later, the respondents filed their response. Dkt. No. 13. Soon after, Ziiadullaev replied. Dkt. No. 16.

On the same day as the reply, Ziiadullaev filed this motion to transfer, arguing that "proper venue for this action lies in the Western District of Oklahoma, where [he] was confined when the [p]etition was filed." Dkt. No. 15 at 5. For the first time, Ziiadullaev's counsel noted that her client was not in fact at Bluebonnet. Apparently, she "only learned of [Ziiadullaev's] transfer to [Diamondback] after the [p]etition had been filed in this Court." *Id.* She did not elaborate on when exactly she learned about the transfer.

The government responded in opposition (Dkt. No. 19) and Ziiadullaev replied (Dkt. No. 21). Currently, Ziiadullaev is still detained at Diamondback. *See* Dkt. No. 18 at 5.

**2.    Legal Framework**

"[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). In this context, "jurisdiction" concerns venue, not subject-matter jurisdiction. *See id.* at 434 n.7; *Khalil v. President, U.S.*, 164 F.4th 259, 273 (3d Cir. 2026); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("[V]enue lies in the district of confinement."). Thus, when habeas petitions are filed in the wrong venue, they may be transferred to the district of confinement under 28 U.S.C. § 1406(a). *See, e.g.*, *Nasrabadi v. Villegas*, No. 3:25-CV-1843, 2025 WL 2308867, at *1 (N.D. Tex. July 22, 2025); *see also* § 1406(a) (authorizing transfer to "any district or division in which [the case] could have been brought").

Transfer, however, is not automatic. "Where venue is improper, the district court should generally dismiss the case." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022). The court may exercise its "broad discretion" to transfer a case under Section 1406(a) when it would serve "the interest of justice." *Id.* at 894, 897 (quotations omitted). In evaluating the interest of justice, courts consider, among other things, whether the

transfer would aid a "non-diligent plaintiff." *See id.* at 894 (quoting *Dubin v. United States*, 380 F.2d 813, 816 n.5 (5th Cir. 1967)).

**3.      Analysis**

Based on the limited record, the Court concludes that habeas jurisdiction does not lie in the Northern District of Texas.  Petitions like this one must be brought in the district of confinement.  *Padilla*, 542 U.S. at 443.  There is every indication that Ziiadullaev was in Oklahoma when his petition was filed on December 30, 2025.  When the petition hit the docket at 11:54 a.m., Ziiadullaev was nearly done with what the respondents say is a four-and-a-half-hour trip from Bluebonnet to Diamondback.  Dkt. No. 20 at 4; *see* Dkt. No. 19 at 2 (estimating that the transport "would not have reached Diamondback until 12:14 p.m.").  In their response, the respondents do not dispute Ziiadullaev's contention that he "was physically in Oklahoma" when the petition was filed.  Dkt. No. 18 at 6.  Nor could they.  As Ziiadullaev notes, it takes about two hours to get from Anson, where Bluebonnet is located, to the Oklahoma border.  Dkt. No. 21 at 3.  That places him in Oklahoma around 9:54 a.m.—two hours before the petition went live.  So even if Ziiadullaev had not yet arrived at Diamondback at 11:54 a.m., it is still virtually certain that he was in Oklahoma and not in this district.  The respondents do not suggest otherwise.  Thus, the petition was not filed in the district of confinement, and this Court lacks habeas jurisdiction.

The question, then, is whether to transfer this case to Ziiadullaev's current district of confinement (the Western District of Oklahoma) or dismiss it.  On these facts, dismissal is more appropriate.  For starters, the Court is unconvinced that the petitioner's counsel acted with diligence in litigating this action.  *See Seville*, 53 F.4th at 894.  While the Court has no reason to believe that counsel filed the petition knowing that Ziiadullaev was on the move,

subsequent events—including the amended petition's impromptu reference to a potential custodial change, the delay between the petition and the transfer motion, and the generic references to learning of the transfer "after the [p]etition had been filed"—raise questions about whether the Court was timely made aware of the potential jurisdictional defect. *See* Dkt. No. 18 at 5. What's more, the interest of justice does not weigh in Ziiadullaev's favor. Transferring this case to the Western District of Oklahoma is not nearly as efficient as he makes it out to be. *See* Dkt. No. 21 at 4–5. Punting the petition to a U.S. Attorney's Office that does not have any familiarity with the facts or procedural history will only draw this case out longer. Today's decision allows Ziiadullaev to do what he apparently wanted from the get-go: file a new petition in the Western District of Oklahoma.[1]

### 4.        Conclusion

The Court lacks jurisdiction over the petition because it was not filed in Ziiadullaev's district of confinement. But the Court will not exercise its discretion to transfer the case to the Western District of Oklahoma. *See* 28 U.S.C. § 1406(a). The motion to transfer venue (Dkt. No. 18) is denied, and the habeas petition (Dkt. No. 1) is dismissed without prejudice. All other pending motions are denied as moot. *See* Dkt. Nos. 15; 23.

A final judgment will enter separately.

So ordered on May 11, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[1] According to the certificate of conference, Ziiadullaev's counsel first offered to stipulate to the withdrawal and dismissal of this petition without prejudice in light of the out-of-district transfer. Dkt. No. 18 at 10. Counsel for the respondents did not agree. *Id.*